UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**LEONE M.,**[1]

    **Plaintiff,**

    v.

    Case No. 3:20-cv-0256
    Magistrate Judge Norah McCann King

**COMMISSIONER OF SOCIAL SECURITY,**[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Leone M. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the decision of the Commissioner of Social Security denying that application. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 10, *Defendant's Brief*, ECF No. 13, *Plaintiff's Reply*, ECF No. 15, and the *Certified Administrative Record*, ECF No. 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.    **PROCEDURAL HISTORY**

In October 2014, Plaintiff filed his current[3] application for benefits, alleging that he had been disabled since August 23, 2014, due to a number of impairments. R.183-88. The application was denied following an administrative hearing, and Plaintiff sought review of that decision in this Court. *M[.] v. Commissioner of Social Security*, 382 F.Supp.3d 718 (S.D. Ohio 2019). Concluding that the Administrative Law Judge (hereinafter "ALJ") had erred in her consideration and evaluation of the limiting effects of Plaintiff's impairments, the Court reversed the Commissioner's decision as unsupported by substantial evidence and remanded the case, pursuant to Sentence 4 of 42 U.S.C. § 405(g), for "proceedings consistent with this opinion…." *Id.* at 726. Thereafter, the Appeals Council vacated the ALJ's decision and remanded the matter with directions to offer Plaintiff a "hearing, take any further action needed to complete the administrative record and issue a new decision." R. 986.

The matter was then assigned to ALJ Gregory G. Kenyon, who held another administrative hearing on January 14, 2020, at which Plaintiff, who was again represented by counsel, testified, as did a vocational expert. R. 902-29. Plaintiff amended his claim to assert a closed period of disability, extending from October 20, 2014, to August 28, 2016. R. 1063. In a decision dated February 26, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act during that closed period of disability. R. 881-94. Plaintiff again seeks review of that decision pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 17. The matter is ripe for disposition.

---

[3] Plaintiff filed a prior application for SSI in April 2012. R. 177-82. The Court will refer to pages in the Certified Administrative Record as "R. __," using the pagination as it appears in the Certified Administrative Record.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not

be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

    B.    **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. / § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.     THE ALJ'S DECISION AND APPELLATE ISSUES

The Plaintiff was 28 years old on the date on which his application was filed. R. 892. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the closed period of disability but had engaged in substantial gainful activity since August 28, 2016. R. 884.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: depression, a schizoaffective disorder, anxiety disorder, attention deficit hyperactivity disorder, and a history of polysubstance abuse. R. 884-85. The ALJ also found that Plaintiff's prior gun shot and stab wounds did not result in severe impairments during the closed period of disability. R. 888.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of

5

impairments that met or medically equaled the severity of any Listing. R. 888-89.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> (1)performing simple, repetitive tasks with an SVP of 1 or 2; (2) occasional superficial contact with coworkers and supervisors (superficial contact is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as unable to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts); (3) no public contact; (4) no teamwork or tandem tasks; (5) no fast-paced production work or jobs which involve strict production quotas; (6) performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next; and (7) no occupational exposure to drugs or alcohol.

R. 889-90. The ALJ also found that, during the closed period of disability, Plaintiff had no past relevant work. R. 892.

At step five, and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*i.e.*, jobs as a floor waxer, jobs as an industrial cleaner, and jobs as a machine packager—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 893. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act during the alleged closed period of disability.

Plaintiff disagrees with the ALJ's findings and conclusion, arguing that the ALJ erred by committing the same or similar mistakes in evaluating the record and Plaintiff's symptom severity that had led to the earlier remand. He asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 10; *Plaintiff's Reply*, ECF No. 15. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected

consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No.

IV.     **RELEVANT EVIDENCE**

Plaintiff testified at the January 2020 administrative hearing that, during the claimed closed period of disability, he was depressed and experienced suicidal thoughts. R. 911-12. He also experienced visual and auditory hallucinations and paranoia. R. 912-15. He had difficulty working with people and controlling his temper. R. 916-17. He received mental health treatment during the closed period and was prescribed medication. R. 921. Some of the medications caused bad side effects, but "the last one" helped. . . to keep me going day by day. . . ." R. 921-22. However, Plaintiff had not undergone additional mental treatment since the first administrative hearing because "they took my insurance." R. 906, 921. He has been working since August 2016. Asked to explain why he was able to work after that date but not before, Plaintiff testified: "I forced myself to go back to work." R. 919. "I'm just in there to do my hours and leave. . . ." R. 923.

The record does not contain an opinion from a medical provider regarding Plaintiff's ability to engage in work-related activities, but does include treatment records. Plaintiff began treatment at Eastway Corporation in June 2014 for diagnoses of major depressive disorder, recurrent and severe, with psychosis, and r/o schizoaffective disorder. R. 646. His mood at initial assessment was depressed, anxious, irritable, and angry and his affect was constricted and flat. R. 650. Medication was prescribed, R. 651, and medical management was continued throughout his treatment at Eastway. *E.g.*, R. 654, 657. At office visits in August and October 2014, Plaintiff's mood was described as depressed and irritable, and his affect was constricted. R. 653, 655-56. In December 2014, Plaintiff was described as cooperative, R. 681, and he

reported, "One reason I did ok was because I was on my meds." R. 680. In February 2015, Plaintiff's mood was described as euthymic. R. 684. His mood in May 2015 was described as "[d]epressed, mild to moderate" and his thought process was "Goal-Directed." R. 830-31. In June 2015, his mood was described as "[d]epressed – mild." R. 827-28. In December 2015, Plaintiff's condition was described as euthymic and cooperative, and referrals were made for possible employment. R. 845. By February 2016, Plaintiff reported that "he has been busy working," R. 836, and office notes from April 2016 indicated that work "is going 'fine.'" R. 836. In May 2016, Plaintiff reported difficulty with coworkers. R. 1093. His mood was angry, his affect was constricted and flat, his behavior was cooperative, and his thought process was goal-directed. R. 1094. In August 2016, Plaintiff reported that he had quit his job and his mood was again described as depressed, anxious, irritable, and angry and his affect was constricted. R. 856-57. (As noted above, the ALJ found that Plaintiff has engaged in substantial gainful employment since August 2016 and Plaintiff does not seek benefits beyond that date.) In March 2017, Plaintiff's medication was adjusted, R. 1109, and he declined recommended psychotherapy. R. 1108. In June 2017, Plaintiff's mood was described as depressed and his affect as flat, but his behavior was cooperative and his thought processes were goal-directed. R. 1111. Plaintiff reported that his "[d]ays are going well; he is a good worker…." *Id.*

Plaintiff also underwent counseling at Day Mont West Behavioral Health for cannabis dependency. In February 2013, Plaintiff was described as cooperative, R. 665, and he reported that he had a booth at a flea market, R. 667. Treatment was discontinued in October 2013. R. 673.

V.	DISCUSSION

In his decision, the ALJ accurately summarized the evidence of record, including treatment notes from Colbert Family Health & Wellness and various hospital records, *see, e.g.*, R. 625-42, 690-806, 807-21, and found, at step 3 of the sequential evaluation, that Plaintiff experienced, during the alleged period of disability, no more than a mild limitation in his ability to understand, remember, or apply information, R. 886, no more than a moderate limitation in interacting with others and in concentrating, persisting, or maintaining pace, R. 887, and no limitation in adapting or managing himself. *Id*. In considering Plaintiff's subjective complaints, the ALJ found as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably have been expected to cause the alleged symptoms; however, the extent of limitation alleged during the closed period is largely unsubstantiated by convincing objective medical evidence or clinical findings. The evidence generally does not support the alleged loss of functioning. The record shows allegations of paranoia and auditory/visual hallucinations are diminished when the claimant maintained a therapeutic level of care. He has some aversion to public spaces but it is well within his control to be able to interact appropriately with others who are known to him and conform to socially acceptable standards in public. The claimant has lived independently and managed his own household, and it is apparent from the evidence that when he is fully engaged with treatment and takes his medication while also exercising the will power to refrain from substance abuse, daily living activities are not significantly restricted.

R. 892. Plaintiff contends that these findings failed to comply with this Court's mandate and lack substantial support in the record. This Court disagrees.

In the earlier opinion, the Court reasoned that the first ALJ had failed to adequately explain, in light of the clinical observations reflected in the record, her finding that Plaintiff's subjective complaints regarding his limitations were not supported by objective medical evidence. *M*[.], 382 F.Supp.3d at 723. As the summary provided above makes clear, the second ALJ adequately summarized the evidence in the record and adequately explained his finding that

9

Plaintiff's subjective complaints regarding his work-related limitations were not supported by that objective medical evidence.[4] To the extent that Plaintiff may argue that the second ALJ was required to adopt the facts mentioned by the Court in *M*[.], the Court rejects any such argument. In reversing the earlier administrative decision and remanding the matter for further consideration, the Court did not–and indeed could not properly– "decide the facts anew, evaluate credibility, or re-weigh the evidence." *Ackles v. Commissioner of Social Security*, 470 F.Supp.3d 744, 752 (N.D. Ohio 2020) (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)).

Plaintiff also contends that the second ALJ failed to comply with the Court's mandate in *M*[.] by improperly equating Plaintiff's activities of daily living with an ability to sustain competitive employment. *Plaintiff's Statement of Errors*, ECF No. 10, PageID# 1205-06. In *M*[.], the Court held that the first ALJ had erred in equating Plaintiff's reported babysitting of his roommate's children with an ability to work on a sustained basis. *Id*. at 725. It is true that the second ALJ expressly considered Plaintiff's daily activities in finding that his alleged limitations during the closed period of disability are "largely unsubstantiated by convincing objective medical evidence or clinical findings." R. 892. In making this finding, the ALJ engaged in an exhaustive summary of all the evidence of record and did not rely on merely one fact. R. 886-88. Indeed, the second ALJ did not mention babysitting activities. Moreover, consideration of a claimant's daily activities is a factor that an ALJ is required to consider in evaluating a claimant's subjective allegations. *See* 20 C.F.R. § 416.929(c)(3)(i); SSR 16-3p, 2017 WL 5180304, at *7 (Oct. 25, 2017) (requiring consideration of, *inter alia*, a claimant's daily activities

---

[4] In *Defendant's Brief*, the Acting Commissioner refers at times to information not before the Court in *M*[.], 382 F.Supp.3d 718, and to evidence and reasoning not expressly considered by the ALJ in this case. This Court has disregarded all such references.

in addressing the extent to which an individual's symptoms affect his ability to perform work-related activities). In short, this Court concludes that the ALJ did not err in considering Plaintiff's activities of daily living.

Finally, Plaintiff points out that the ALJ's reference to "Exhibit 2F at 6," which is a hospital record relating to a 2011 suicide attempt by overdose, R. 412, cannot support the ALJ's finding that Plaintiff has the ability to "attend to personal care needs, manage his finances, prepare simple meals, perform many household chores, and use social media." R. 888. However, the ALJ's other reference in support of that particular finding, Exhibit 11E (a 2014 functional report indicating that Plaintiff has no problem with personal care, can prepare his own meals, can leave his residence alone everyday, can use public transportation, and can manage his own finances, R. 313-16) does offer support for that finding. Of course, the ALJ's summary of other evidence of record also supports the ALJ's finding that the "evidence generally does not support the alleged loss of functioning." Under these circumstances, the ALJ's error in citing to "Exhibit 2F at 6" in this regard is harmless.

VI.  CONCLUSION

For all these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 10, and **AFFIRMS** the Commissioner's decision. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  July 15, 2022                              *s/Norah McCann King*
                                                  NORAH McCANN KING
                                                  UNITED STATES MAGISTRATE JUDGE